UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| REGAL CINEMAS, INC. | ) | CASE NO. 1: 05 CV 1644 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| FIRST INTERSTATE | ) | |
| WILLOUGHBY, LTD, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Defendant. | ) | |

This matter comes before the Court upon the Motion for Summary Judgment filed by Plaintiff Regal Cinemas, Inc. ("Regal") (ECF # 11) and the Cross-Motion for Summary Judgment filed by Defendant First Interstate Willoughby, LTD ("First Interstate") (ECF #15).

I.

On April 4, 1997, Regal and First Interstate entered into a lease for approximately 63,415 square feet of real property, consisting of a movie theater building in Lake County, Ohio (the "Lease"). (ECF # 1, Ex. A at (i), 1.1.) The Lease provides, *inter alia*, that Regal is to pay First Interstate certain "Minimum Rent," as set forth in Section 4.03 of the Lease, and, as applicable, the "Percentage Rent," as set forth in Section 4.04 of the Lease. (*Id.*, Ex. A at 4.1-4.3.) Section 4.04(b) of the Lease contains an "Adjustment Formula," that reduces the Percentage Rent under certain circumstances. (*Id.*, Ex. A at 4.2-4.3.) In particular, the subsection entitled, "Adjusted Gross Ticket Sales," provides the following:

> Percentage Rent on Gross Ticket Sales is based on Tenant renting each film shown at the Premises at the rental of 39% or less of Gross Ticket Sales for that film (the "39% Rate"). If Tenant's film rental payment to its distributor for a film is at a rate greater than the 39% Rate, whether expressed in those terms or expressed otherwise

such as the "90/10 Rule," (herein the "Greater Rate"), the Gross Ticket Sales for the film rented at the Greater Rate shall be deemed to be in the reduced amount for the purposes of Percentage Rent, using the following **"Adjustment Formula"**;

> Subtract from the amount of actual Gross Ticket Sales in a Calendar Year the product of: (i) the difference between the Greater Rate and the 39% Rate multiplied into (ii) the Gross Ticket Sales.
>
> Illustratively:
>
> Gross Ticket Sales = $10,000
> Greater Rate = 44%
> Greater Rate - 39% Rate = 5%
> 5% of $10,000 = $500
> Gross Ticket Sales for Percentage Rent = $9,500

(*Id.*, Ex. A at 4.2-4.3 (emphasis in original).) Section 4.04(a)(i) of the Lease defines "Gross Ticket Sales" as "all box office receipts for the sale of admission tickets to the Theater on the Premises." (*Id.*, Ex. A at 4.2.)

On October 30, 2001, Regal and First Interstate agreed to an amendment to the Lease (the "Amendment"). (*Id.*, Ex. B.) The Amendment states, in pertinent part:

> **Modification of Percentage Rent.** Landlord and Tenant do hereby agree that effective as of the Calendar Year 2002 (Jan. 1, 2002 - Dec. 31, 2002) and every Calendar Year thereafter during which Tenant pays Reduced Minimum Rent (which excludes any Calendar Year that Tenant pays Original Minimum Rent and excludes any Extension Period), Tenant's Percentage Rent for each such Calendar Year shall be equal to Twenty Percent (20%) of all Gross Ticket Sales (as defined in Section 4.04 of the Lease) made in the Premises in excess of the Percentage Rent Breakpoint[1] established by this Amendment.
>
> * * *
>
> For the Calendar Years during which Tenant pays Reduced Minimum Rent, the Percentage Rent set forth in this Amendment shall be paid by Tenant in lieu of the Percentage Rent set forth in Section 4.04 of the Lease, and the calculation of the amount of Percentage Rent due for each such Calendar Year shall be as provided in

---

[1] The "Percentage Rent Breakpoint" for purposes of the Amendment is $2,750,000.00. (ECF # 1, Ex. B. at 2.)

2

this Amendment instead of the Percentage Rent calculation provisions set forth in Section 4.04 of the Lease.

(*Id.*, Ex. B at 2-3.) The Amendment also contains integration and ratification clauses. (*Id.*, Ex. B at 6.) Those clauses provide:

> 6. **Entire Amendment.** This Amendment constitutes the complete agreement of Landlord and Tenant with respect to the subject matter hereof. No representations, inducements, promises or agreements, oral or written, have been made by Landlord or Tenant, or anyone acting on behalf of Landlord and Tenant, which are not contained herein, and any prior agreements, promises, negotiations, or representations are superseded by this Amendment. This Amendment may not be amended except by an instrument in writing signed by the parties hereto.
>
> * * *
>
> 7. **Ratification.** Except as hereinabove set forth, the Lease shall remain unmodified and in full force and effect, and Landlord and Tenant do hereby ratify and confirm the Lease, as modified and amended herein.

(*Id.*, Ex. B at 6.)

On June 21, 2005, Regal filed a Complaint against First Interstate claiming that, "For calendar years 2003 and 2004, [it] overpaid Percentage Rent to Interstate based upon a computation of Gross Ticket Sales without the adjustment permitted and provided in Section 4.04(b)" of the Lease. (*Id.* at ¶ 12.) According to Regal, Section 4.04(b), which contains the Adjustment Formula, was not modified by the Amendment and remains "in full force and effect." (*Id.* at ¶ 11.) Regal alleges that its failure to apply the Adjustment Formula in 2003 and 2004 resulted in a total overpayment of $138,381.34. (*Id.* at ¶ 15.) Thus, Regal filed the Complaint against First Interstate seeking "(a) a declaratory judgment by this Court that it is entitled to calculate Gross Ticket Sales, during the period(s) when Reduced Minimum Rent is payable, based on Adjusted Gross Ticket Sales, as set forth in paragraph 4.04(b) of the Lease, and (b) a judgment for the $138,381.34 in past overpayments to Interstate, with interest, costs,

and attorneys' fees." (*Id.* at ¶ 16.)

On August 1, 2005, First Interstate filed an Answer and Counterclaim. (ECF # 9.) First Interstate states that the Amendment, which "drastically reduced the amount of Minimum Rent payable during the initial Rent Term,"[2] expressly modified the provisions of Section 4.04 of the Lease. (*Id.* at ¶¶ 8-9.) More specifically, First Interstate claims that the parties expressly agreed in the Amendment that the Adjustment Formula should not apply in the years during which Regal pays Reduced Minimum Rent. (*Id.* at ¶ 11.) As such, First Interstate seeks: "(a) a declaratory judgment that First Interstate had been properly paid its Percentage Rent under its Amended Lease with Regal for 2003 and 2004, (b) a declaratory judgment by this Court that First Interstate is entitled to calculate Gross Ticket Sales for years in which Regal is only required to pay 'Reduced Minimum Rent,' in accordance with paragraph 3(c)[3] of the Amendment to Lease without regard to the adjustment set forth in paragraph 4.04(b) of the Lease." (*Id.* at 4-5.)

On August 11, 2005, Regal filed a Motion for Summary Judgment relating to its Complaint and First Interstate's Counterclaim. (ECF # 11 at 1.) In particular, Regal moves the Court to enter summary judgment against First Interstate, declaring that Regal is entitled to apply the Adjustment Formula "to deem Gross Ticket Sales to be in a reduced amount for the purposes of computing Percentage Rent when Reduced Minimum Rent is payable" under the Amendment. (*Id.* at 1-2.) Regal also seeks $138,381.34 for the alleged overpayments, plus interest, costs and attorneys' fees. (*Id.* at 2.)

---

[2] The initial rent term is through October 31, 2018. (ECF # 9 at ¶ 8.)

[3] Because Section 3 of the Amendment, "Modification of Percentage Rent," does not contain subsections, the Court assumes that First Interstate's citation to paragraph 3(c) is intended to apply to Section 3 in its entirety.

4

On September 19, 2005, First Interstate filed a Cross-Motion for Summary Judgment and an Opposition to Regal's Motion for Summary Judgment. (ECF # 15.) Regal likewise seeks summary judgment on the Complaint and Counterclaim, based on its position that Regal is not entitled to apply the Adjustment Formula when it is required to pay Reduced Minimum Rent. (*Id.* at 1.) These Motions are currently before the Court for review.

## II.

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. It is with these standards in mind that the instant Motions must be decided.

## III.

Regal and First Interstate agree upon the law applicable to this case. (ECF # 11 at 4-5, ECF # 15 at 6.) Under Ohio law, "[t]he purpose of contract construction is to effectuate the intent of the parties, and that intent 'is presumed to reside in the language they chose to employ in the agreement.'" *State ex. rel. Petro v. R.J. Reynolds Tobacco Co.*, 820 N.E.2d 910, 915 (Ohio 2004) (quoting *Kelly v. Medical Life Ins. Co.*, 509 N.E.2d 411, 413 (Ohio 1987)). Further, "When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol

5

or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." *Layne v. Progressive Preferred Ins.*, 820 N.E.2d 867, 869 (Ohio 2004) (quoting *Ed Schory & Sons v. Society Nat'l Bank*, 662 N.E.2d 1074, 1080 (Ohio 1996)).

Here, Regal and First Interstate agree that the Lease and Amendment are fully integrated, unambiguous and can be interpreted as a matter of law, yet each party interprets the relevant language differently. This Court agrees that the Lease and Amendment are fully integrated and unambiguous, and thus it will not go beyond the plain language to determine the rights and obligations of the parties.

In the Section 3 of the Amendment, the "Modification of Percentage Rent" provides that, when Regal pays Reduced Minimum Rent, its Percentage Rent is "20% of all Gross Ticket Sales (as defined in Section 4.04 of the Lease)," in excess of $2,750,000.00. (ECF # 1, Ex. B at 2.) Section 4.04(a)(i) of the Lease, entitled "Definitions," defines Gross Ticket Sales as "all box office receipts for the sale of admission tickets to the Theater on the Premises."[4] (*Id.*, Ex. A at

---

[4] Section 4.04(a)(ii) provides that Gross Ticket Sales shall be further defined as sales excluding:

(1) discounts, allowances, or cash or credit refunds made to customers in the ordinary course of business; and

(2) goods returned to sources or transferred to another store or warehouse owned or leased by or affiliated with Tenant when such return or transfer is not related to a sale of merchandise in the Premises or is made solely for the convenient operation of Tenants [sic] business; and

(3) sums and quotes received in the settlement of claims for loss of or damage to merchandise; and

(4) interest, service or service carrying charges or other charges, however denominated, paid by customers for extension of credit on sales where those charges are not included in the ticket or merchandise sales products; and

(5) sales taxes, excise taxes, gross receipts tax or other similar taxes now or hereafter imposed by federal, state and local governmental bodies upon the sale of tickets, concessions, food, merchandise or services; and

4.2.) Accordingly, under Section 3 of the Amendment, Percentage Rent, when Regal pays Reduced Minimum Rent, consists of 20% of all box office receipts for the sale of admission tickets in excess of $2,750,000.00.

Section 3 likewise states that, when Regal pays Reduced Minimum Rent, the Percentage Rent set forth in the Amendment shall be paid by Regal "in lieu of the Percentage Rent set forth in Section 4.04 of the Lease, and the calculation of the amount of Percentage Rent due . . . shall be as provided in this Amendment instead of the Percentage Rent calculation provisions set forth in Section 4.04 of the Lease." (*Id.*, Ex. B at 3.)

There is no dispute that Regal paid First Interstate Reduced Minimum Rent in 2003 and 2004, and that Regal owed First Interstate Percentage Rent during those years. The sole issue before this Court is whether the Adjustment Formula in Section 4.04 of Lease can be applied to further reduce the Percentage Rent calculation set forth in Section 3 of the Amendment. Based upon the plain language set forth above, this Court finds that it cannot.

The express terms of the Amendment make clear that: (1) Regal is to pay the Percentage Rent in Section 3 of the Amendment "in lieu of" the Percentage Rent in Section 4.04 of the Lease and (2) the Percentage Rent calculation in Section 3 of the Amendment is to be used "instead of" the Percentage Rent calculation in Section 4.04 of the Lease. Accordingly, based upon the plain language of the Amendment, the Percentage Rent calculation in Section 4.04 of the Lease, including the Adjustment Formula, is no longer applicable.

The Amendment's reliance on the definition of Gross Ticket Sales in Section 4.04 of the

---

(6) sales of fixtures, equipment or property not in the course of normal business.

(ECF # 1, Ex. A at 4.2.)

Lease does not change that fact. As noted above, the definition of Gross Ticket Sales referred to in the Amendment is found in Section 4.04(a)(i) of the Lease, entitled "Definitions." Because the Adjustment Formula in Section 4.04(b) of the Lease provides the calculation for Percentage Rent when a film rental payment is greater than the 39% Rate — it does not provide the definition for the term Gross Ticket Sales — it is rendered inapplicable under the plain language of the Amendment. Thus, the Adjustment Formula in Section 4.04 of Lease cannot be applied to further reduce the Percentage Rent calculation set forth in Section 3 of the Amendment.

Having reached that decision without the use of extrinsic evidence to interpret the plain language of the Lease and Amendment, this Court would be remiss in failing to acknowledge the broader circumstances that also support its determination as to the meaning of the relevant language. Experience, fair dealing and mutuality are the hallmarks of contract negotiation. Regal is a sophisticated party that bargained for and achieved the opportunity to pay reduced rent in the Amendment. It acted consistent with the terms of the Amendment in 2003 and 2004, and paid First Interstate the money that it was owed thereunder. Having had the benefit of that rent reduction, and having acted consistent with the terms of the Amendment for years, Regal now comes to this Court asking for a further reduction based upon its current reading of the agreement. If Regal had wanted the Adjustment Formula in the Lease to further reduce the Percentage Rent in the Amendment, it should have bargained for the inclusion of such language at the time of the contract negotiations. Regal did not, and neither the plain language of the Amendment nor Regal's past conduct supports its position.

### IV.

Based upon the foregoing, Regal's Motion for Summary Judgment (ECF # 11) is

DENIED and First Interstate's Cross-Motion for Summary Judgment (ECF #15) is GRANTED.

This case is TERMINATED.

IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED: October 6, 2005